UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**BUTLER AMUSEMENTS, INC.**        *

     Plaintiff-Employer,        *

          **v.**        *   Case No. 1:24-cv-01042-BAH

**U.S. DEPARTMENT OF LABOR, et al.**        *

     Defendants.        *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

_____

Judicial Review of Final Agency Action of the
Department of Labor, Administrative Review Board

_____

**R. Wayne Pierce, Esquire**
The Pierce Law Firm, LLC
133 Defense Hwy, Suite 201
Annapolis, Maryland 21401-7015
410-573-9955
wpierce@adventurelaw.com
Attorney for Employer-Respondent

September 16, 2024

## TABLE OF CONTENTS

**Page**

Glossary of Abbreviations, Acronyms, and Terms     iii

**Issues**     1

**Introductory Statement**     1

**Statement of Case**     2

**I.  Course of Proceedings**     2

**II.  Statement of Facts**     3

**Argument**     15

**I.    Standard of Review, Burden of Proof and Reasoned Decisionmaking**     15

**II.  The 2008 DOL Rule Is Unenforceable**     17

**III.  This Action Is Time-Barred by the Statute of Limitations**     29

**IV.  DOL's Jury-Less Adjudication Violated Article III and the Seventh Amendment**     38

**V. DOL's Adjudication Violated Article II Because the ALJ Was Improperly Insulated from Removal**     41

**VI.  DOL Erred As a Matter of Law by Failing to Allow Offsets to Employer**     42

**Conclusion**     46

## GLOSSARY OF
## ABBREVIATIONS, ACRONYMS, TERMS, AND VISAS

| | | |
|---|---|---|
| 2008 DHS Rule | – | 73 Fed. Reg. 78104 (Dec. 19, 2008), codified as 8 C.F.R. §214.2(h)(6) |
| 2008 DOL Rule | – | 73 Fed. Reg. 78020 (Dec. 19, 2008), *codified as* 20 C.F.R. §655, Subpart A (2009) |
| 2012 DOL Rule | – | 77 Fed. Reg. 10038 (Feb. 21, 2012) |
| 2013 IFR | – | 78 Fed. Reg. 24047 (Apr. 24, 2013) |
| 2015 DHS-DOL Rule | – | 80 Fed. Reg. 24042 (Apr. 29, 2015) and *id*. at 24146 |
| 2015 Enforcement Rule | – | WHD's H-2B enforcement regulations<br>80 Fed. Reg. 24084, 24131 (Apr. 29, 2015), *codified as* 29 C.F.R. §503 |
| 2015 Final Wage Rule | – | ETA's H-2B administrative regulations governing the wage methodology<br>80 Fed. Reg. 24146 (Apr. 29, 2015), *codified as* 20 C.F.R. §655.10 |
| 2015 IFR | – | 80 Fed. Reg. 24042 (Apr. 29, 2015) (AR 000001-104), consisting of ETA's H-2B program administration regulations known as the "2015 Program Rules," as well as WHD's separate H-2B enforcement regulations known as the "2015 Enforcement Rules" |
| 2015 Program Rules | – | ETA's H-2B program administration regulations<br>80 Fed. Reg. 24050, 24108 (Apr. 29, 2015), *codified as* Subpart A of DOL's 20 C.F.R. §655 |
| AAO | – | Administrative Appeals Office |
| ADD | – | Assistant District Director |
| ALJ | – | Administrative Law Judge |
| AR | – | Administrative Record |
| ARB | – | Administrative Review Board |
| AX | – | Administrator's Exhibit |
| APA | – | Administrative Procedure Act of 1946 |
| CMP | – | Civil monetary penalty |
| D&O | – | Decision and Order |
| DHS | – | Department of Homeland Security |
| DOL | – | Department of Labor |

| | |
|---|---|
| Er.Add. | – Employers' Addendum |
| ETA | – Employment and Training Administration |
| FLSA | – Fair Labor Standards Act, 29 U.S.C. §§ 201-219 |
| H-2B clause | – 8 U.S.C. §1101(a)(15)(H)(ii)(b) |
| IFR | – Interim Final Rule |
| INA | – Immigration and Nationality Act of 1952 |
| INS | – Immigration and Naturalization Service |
| JA | – Joint Appendix |
| OFLC | – Office of Foreign Labor Certification |
| RX | – Respondent's Exhibit |
| SWA | – State workforce agency |
| Tr. | – Transcript |
| USCIS | – United States Citizenship and Immigration Service |
| WHD | – Wage and Hour Division |

**ISSUES**

1.  Whether the 2008 DOL Rule is unenforceable because it was vacated and DOL voluntarily replaced and superseded it.

2.  Whether this action is time-barred by the statute of limitations.

3.  Whether DOL's jury-less adjudication violated Article III and the Seventh Amendment.

4.  Whether DOL's adjudication violated Article II because the ALJ was impermissibly insulated from removal.

5.  Whether DOL arbitrarily failed to offset back wages with Employer's supplemental pay and valuable facilities.

**INTRODUCTORY STATEMENT**

After spending the last 11 years defending itself against investigations and enforcement proceedings from DOL under regulations that were vacated nearly a decade ago, Plaintiff-Employer Butler Amusements, Inc. is entitled to summary judgment because it is charged with violating a regulation that is unenforceable.  The 2008 DOL Rule was vacated by the Northern District of Florida in early 2015.  In response, DOL chose to replace and supersede it, so there was nothing left to enforce.  Lest there be any doubt, this Court should vacate the regulation as applied because Congress authorized another agency, not DOL, to issue regulations.

That alone is enough to resolve this case, but it is not the regulation's only legal infirmity. The Employer's alleged violation was more than five years old at the time of citation and should be dismissed as a matter of law under the statute of limitations.

In a scrum where DOL appointed itself rulemaker, investigator, prosecutor, judge, jury, appeal board, and collector in this case, the DOL's action should be vacated for failing to extend a right to a jury trial.  The Supreme Court recently clarified in *Securities & Exch. Comm'n v.*

*Jarkesy*, 144 S. Ct. 2117 (2024) ("*Jarkesy II*"), that, when a case is in the nature of a suit at common law, two things necessarily follow: First, the case implicates the Seventh Amendment right to a jury trial. And, second, the case involves "private rights," which must be adjudicated under Article III.  The Court determined the SEC's claims were in the nature of a suit at common law by focusing on the remedy, which was civil penalties, just like the CMPs DOL seeks here. Under *Jarkesy*, the DOL's adjudication in this case violated both Article III and the Seventh Amendment.

Concurrently, the DOL ALJs are overly protected from removal under provisions governing the Executive Branch. Specifically, the ALJs are protected by a dual layer of for-cause tenure protections. This claim reflects the worrisome status of ALJs within our constitutional structure, as they simultaneously violate both Article II and Article III.

Finally, DOL also arbitrarily violated the APA by failing to explain how it applied its own regulations, as well as misapplying the precedents to which it was obligated to adhere. DOL arbitrarily shifted the burden of proof to Employer and failed to explain why Employer was not entitled to the extensive offsets that it proved at the hearing.  These errors also require *vacatur*.

## STATEMENT OF CASE

## I.  COURSE OF PROCEEDINGS

This enforcement action is based exclusively on a single purported violation of the 2008 DOL Rule.  AR 3789 & 3805. There are no allegations that the 2015 IFR was violated.  AR 3805.  Employer filed a motion for summary judgment based in part on the statute of limitations, which the ALJ denied.  AR 0355.  The factual hearing occurred on May 8-9, 2019.  AR 3789. Both parties submitted post-hearing briefs on July 23, 2019.  On September 30, 2020, the ALJ

filed the D&O, ruling that the Employer violated 20 C.F.R. §655.22 (n) (2009)[1] because nine H-2B employees worked outside of their job classification, and assessing back wages of $26,786 and CMP's of $10,000.  AR 3819.  The ARB affirmed.  AR 4075.

## II.  STATEMENT OF FACTS

### A.  Employer's Practices

Employer is based in Oregon and has run a small, family-owned and operated mobile amusement business on the West Coast for more than 50 years. The company is owned by descendents of the founder's family.  Employer provides mobile amusement rides, games, and food at state and county fairs, festivals, and celebrations.  Employer's efforts are often the primary funding source for local charities and other events.  Complaint ¶10.

Because of the difficulty finding U.S. workers, Employer has hired temporary foreign labor through the H-2B visa program since 2000 without incident.  Even so, Employer engages a third-party professional to prepare the paperwork and advise on compliance issues.  Complaint ¶52.

During the times relevant to this case, Butler's seasonal workers were paid above minimum wage: In 2013, when the events at issue here occurred, Butler paid its workers wages of $8.09-$9.21 per hour, AR 1497-1498, well above the then-prevailing federal minimum wage of $7.25 per hour. Moreover, Butler also compensated its workers by paying for their income tax withholding, mobile housing, local convenience travel for personal errands, and international or relocation travel.

### B.  H-2B Program Authority and APA Challenges

In 1952, Congress passed the Immigration and Nationality Act (INA).  8 U.S.C. § 1101

---

[1] Unless otherwise stated, all citations for the 2008 DOL Rule are to the operative codification in 2009.

(a) (15) (H) (ii) (b). The INA created the H-2 visa category for unskilled temporary agricultural and non-agricultural employment.  It is well-established that Congress created all H visas to promote the national interests, H.R. Rep. No. 82-1365, at 52 (1952); INS Comm'r Argyle R. Mackey, *The New Immigration and Nationality Act and Regulations*, 1 I.&N. Rptr. 29, 29 (Jan., 1953), and alleviate U.S. labor shortages for temporary positions by providing nonimmigrant alien labor, *see* H.R. Rep. 82-1365, at 44-45; INS, *Annual Report of the INS* 31 (1953).  The H-2B program accomplishes these goals by balancing the interests of employers and U.S. workers. *See, e.g., A.F.L.-C.I.O. v. Dole*, 923 F.2d 182, 187 (D.C. Cir. 1991).

The H-2B visa program as such was separately designated by Congress in 1986, as part of the Immigration Reform and Control Act, Pub. L. No. 99-603, 100 Stat. 3359. The H-2B program allows for employment of foreign nationals as temporary non-agricultural workers when an employer's needs cannot be met from the domestic labor pool. *See* 8 U.S.C. §§1101(a)(15)(H)(ii)(b); 1184.

Since enacting the INA, Congress has directed DHS (not DOL) to regulate H-2 and H-2B visas.  *See* 8 U.S.C. §§1103(a), 1184(a).  On the other hand, Congress has never mentioned, much less designated, that DOL has a role to play, nor the authority to promulgate legislative regulations or adjudicate labor certifications under the H-2B program.  Nor has Congress ever authorized DOL to charge employers a fee for processing an application for labor certifications in the H-2B program.

Nevertheless, DHS was permitted to consult with other government agencies and requested DOL's advice for issuing H-2 and H-2B visas.  To carry out this advisory role, DOL issued rudimentary procedural regulations in 1968.  33 Fed. Reg. 7570, 7571 (May 22, 1968)

(adopting 20 C.F.R. § 621.1). These procedures provided the basis for H-2 and later H-2B labor certifications for some 40 years. *See, e.g.*, 73 Fed. Reg. 78020, 78021-22 (Dec. 19, 2008).

Since enacting the INA, Congress had similarly directed DHS (not DOL) to enforce H-2 and H-2B visas, s*ee* 8 U.S.C. §§1103(a)(1), but there were no express penalties. On the other hand, Congress had never mentioned, much less designated, that DOL had a role to play for the enforcement of those visas. In 2005, Congress amended the INA's H-2B enforcement regime to authorize DHS to pursue hearings and penalties for failures to meet "conditions of" or "misrepresentation[s]" in the H-2B petitions filed with DHS, 8 U.S.C. §1184 (c) (14) (A), and further permitted DHS to redelegate those enforcement powers to DOL, *id*. §1184 (c) (14) (B). This narrow redelegation authority for enforcing an H-2B petition issued by DHS does not authorize DHS to redelegate rulemaking or adjudicative functions.

Despite the limited nature of this redelegable enforcement authority – and even before DHS had redelegated that enforcement authority to DOL, *see* 73 Fed. Reg. 78,020, 78,020 (Dec. 19, 2008) (DHS redelegated "H-2B enforcement authority" to DOL "effective January 18, 2009") – DOL unilaterally issued the 2008 DOL Rule purporting to authorize H-2B legislative rulemaking and adjudication. *Id*. at 78,020 (codified at 20 C.F.R. §655, Subpart A). According to DOL, the sole authority for this precipitous action was "8 U.S.C. 1101(a)(15)(H)(ii)(b), 1184(c), and 1188; and 8 C.F.R. § 214.2 (h)," statutory provisions that do not even mention DOL or any rulemaking or adjudicative authority under the H-2B program.

In January and August, 2011, DOL attempted to modify its new H-2B wage methodology. 76 Fed. Reg. 3452 (Jan. 19, 2011); 76 Fed. Reg. 45,667 (Aug. 1, 2011). In September, 2011, these modifications were challenged in federal court and were preliminarily

enjoined because DOL was not "authorized by statute to issue" the regulations. *Bayou Lawn & Landscape Servs. v. Solis*, No. 3:11-cv-00445, at *1-2 (N.D. Fla. Sept. 26, 2011).

In February, 2012, DOL again promulgated regulations to govern the conduct of employers participating in the H-2B visa program. 77 Fed. Reg. 10,038 (Feb. 21, 2012). Those regulations were challenged in federal court in April, 2012, and ultimately were enjoined before ever taking effect on the ground that Congress did not delegate (or authorize DHS to redelegate) rulemaking authority to DOL. *Bayou Lawn & Landscape Servs. v. Solis*, No. 3:12-cv-00183, 2012 U.S. Dist. Lexis 69297, at *13 & n. 10 (N.D. Fla. Apr. 26, 2012).  The Eleventh Circuit later affirmed the preliminary injunction against DOL for lack of H-2B rulemaking authority. *Bayou Lawn & Landscape Servs. v. Secretary of Labor*, 713 F.3d 1080, 1085 (11th Cir. 2013). Later, a permanent injunction and *vacatur* were entered against the 2012 DOL Rule for lack of rulemaking authority in *Bayou Lawn & Landscape Servs. v. Perez*, 81 F. Supp. 3d 1291, 1293, 1295 (N.D. Fla. 2014), *vacated on other grounds*, 621 F. Appx. 620 (11th Cir. 2015).

As a result of the 2012 regulations being enjoined, the 2008 DOL Rule remained in effect until it also was permanently enjoined and vacated for lack of rulemaking authority. *Perez v. Perez*, No. 3:14-cv-00682, 2015 U.S. Dist. Lexis 27606, at *7-12, 14 (N.D. Fla. Mar. 4, 2015). Contemporaneously, the Tenth Circuit invalidated DHS's "[re]delegation" of its decisionmaking authority in the H-2B program to DOL without congressional authorization.  *G.H. Daniels III & Assocs., Inc. v. Perez*, No. 13-1479, 2015 U.S. App. Lexis 19584, at *12 (10th Cir. Nov. 5, 2015).

In 2015, DOL chose to replace and supersede the now-vacated 2008 and 2012 regulations with the 2015 IFR.  *See* 80 Fed. Reg. 24,042 (Apr. 29, 2015).  *See also* 80 Fed. Reg. at 24,090 (discussing case law and DOL's lack of authority to issue the 2008 DOL Rule).

Meanwhile, the U.S. worker that obtained the permanent injunction and *vacatur* of the 2008 DOL Rule filed an "Unopposed Motion to Clarify Permanent Injunction."  In the absence of any opposition from DOL, the federal judge issued a one-line order to "clarif[y]" that her injunction "was not intended to, and does not, apply retroactively," but did not address the status of the concurrent *vacatur*.  *Perez v. Perez*, Case No. 3:14-cv-00682, at *1 (N.D. Fla. Sept. 4, 2015).

## C.  DOL's Adjudication and Enforcement Under the 2008 DOL Rule

**1.  DOL's and USCIS's Adjudicative Practice**.  The substantive provision at issue in this case is found in 20 C.F.R. §655.22 (n).  AR 0699 (opening statement of Administrator) (this is a misclassification case); AR 0715 and 0797 (testimony of Ms. Aguilar) (there was a single violation).  In pertinent part, the 2008 DOL Rule required the employer-applicant to attest that "The dates of temporary need, reason for temporary need, and number of positions being requested for labor certification have been truly and accurately stated on the application."  20 C.F.R. §655.22 (n).  This provision appears *in pari materia* in attestation #13 of ETA Form 9142.  AR 1493.  The Administrator has adopted a practice that it enforces only the attestations in the ETA Form 9142, AR 0709, 0860 (testimony of Ms. Aguilar) (compliance is determined based upon the attestations); AR 0717 (DOL does not enforce any other obligations other than the attestations); AR 0760-0761 (testimony of Ms. Aguilar) (violation was of attestation #13),

**2.  DOL's Enforcement Practice.**  To enforce this attestation, the 2008 DOL Rule allowed DOL to impose remedies of debarment, CMPs, and back wages for violations of H-2B program regulations in its own in-house administrative courts, before its own in-house agency judges. 20 C.F.R. §§ 655.23, 655.65.  To impose liability, DOL's in-house judges had to find that the application contained a "[w]illful misrepresentation of a material fact," or a "substantial

failure" by the employer "to meet" the "terms and conditions" in the H-2B program paperwork. 20 C.F.R. §§ 655.60, 655.65. A "substantial failure" is a "willful failure to comply that constitutes a significant deviation from the terms and conditions" in the H-2B paperwork. 20 C.F.R. §§ 655.60, 655.65.

The amount of back wages or penalties is determined in the first instance by the agency's enforcement personnel in WHD. 20 C.F.R. § 655.65(i). As to CMPs, DOL has the discretion to set them at "the difference between the amount that should have been paid," the wages that "would have been earned," or an amount of DOL's choosing based on non-dispositive factors, but the penalties may not exceed $10,000 per violation occurring in 2013. 20 C.F.R. § 655.65.

Once a penalty is assessed by DOL's enforcement personnel, that determination is reviewed at a hearing by DOL ALJs, who are employees of the agency. *See generally* 29 C.F.R. §§18. As DOL employees, ALJs are affected by the financial health of the agency as a whole. For instance, when DOL was forced to make budget cuts in 2013, the DOL's Office of Administrative Law Judges was forced to cut its budget by five percent and, as a result, furloughed DOL ALJs for multiple days.[2]

---

[2] Under the APA, an aggrieved litigant may submit extra-record evidence when necessary to establish (1) jurisdictional facts to meet conditions precedent to the operation of a statutory scheme, (2) enforcement of constitutional rights, or (3) statutory authority or lack thereof. 5 U.S.C. §706 (2) (F); *B&O R.R. Co. v. United States*, 298 U.S. 349, 368, 372 (1936) (due process requires a full hearing to determine constitutional issues); *United States v. Idaho*, 298 U.S. 105, 109 (1936) (trial court properly admitted evidence whether the additional track was a "spur," which was a mixed question of law and fact which was left to the decision of the court, not to the final determination of the agency); *National Labor Relations Bd. v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 46-47 (1937) ("Upon … review all questions of the jurisdiction of the Board and the regularity of its proceedings, all questions of constitutional right or statutory authority are open to examination by the court."); House Comm. on the Judiciary, *Administrative Procedure Act: Report on S. 7*, H.R. Rep. No. 79-1980, at 45-46 (May 3, 1946) ("Where a court enforces or applies an administrative rule, the party to whom it is applied may … offer evidence and show the facts upon which he bases a contention that he is not subject to the terms of the rule …. [F]acts necessary to the determination of any relevant question of law

ALJs enjoy some statutory protection against removal and can only be removed upon a finding of "good cause" by the Merit Systems Protection Board. 5 U.S.C. § 7521(a), (b). Meanwhile, members of the Merit Systems Protection Board may themselves only be removed for "inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d).  At the same time, ALJs do not enjoy the far greater protection against removal that the Constitution provides for Article III judges.

A certain degree of agency influence is, in fact, part of an agency judge's job description, as "[i]t is the ALJ's *duty* to decide all cases in accordance with agency policy." Morell E. Mullins, *Manual for Administrative Law Judges*, 23 J. Nat'l Ass'n Admin. L. Judges 136-37 (2004) (emphasis added). The Solicitor General has suggested that failure "to follow agency policies" constitutes good cause for removal of an ALJ. *See* Office of the Solicitor General, *Guidance on Administrative Law Judges* 9 (2018), https://perma.cc/SF66-UFGP .

After an ALJ issues a decision, DOL regulations allow an employer to appeal that decision to the ARB, an internal agency appellate court.  20 C.F.R. §655.75.  The ARB is nowhere authorized by any statute. Rather, the Secretary of Labor created the ARB by executive order in 1996. *See* Secretary's Order 02-96, 61 Fed. Reg. 19,978 (May 3, 1996).  The ARB consists of a maximum of five agency judges appointed by the Secretary of Labor.  85 Fed. Reg. 13,186, 13,186 (Mar. 6, 2020).  The ARB does "not have jurisdiction to pass on the validity of

---

must be determined of record somewhere …."); Attorney General's Comm. on Admin. Procedure, *Final Report*, S. Doc. 77-8, at 87 (Jan. 24, 1941) (Article III court "guarantees opportunity for a trial de novo of facts 'where the determinations of fact are fundamental or "jurisdictional," in the sense that their existence is a condition precedent to the operation of the statutory scheme,' and 'in cases brought to enforce constitutional rights.'  On these issues judicial review is not restricted to the administrative record and the litigant may offer to the court evidence not presented to or considered by the agency.") (*quoting Crowell v. Benson*, 285 U.S 22, 54, 60 (1932).

To the extent that any such extra-record evidence is disputed, Employer requests such a *de novo* hearing.

any portion of the Code of Federal Regulations that has been duly promulgated by the Department of Labor and shall observe the provisions thereof … in its decisions." *Id*. at 13,187. All ARB decisions are subject to review by the Secretary of Labor. 85 Fed. Reg. at 13,188.

    **3. WHD's Enforcement Experience.** In recent years, the volume of enforcement activity under the H-2B program has significantly increased. From 2011, the first year for which DOL makes data available, to 2018, annual CMPs imposed by DOL for violations of the H-2B program averaged $335,802.33. From 2019 to 2022, that annual average was $1,737,054.42. *Available at* https://www.dol.gov/agencies/whd/data/charts/industries-h2b-workers (XLS, "H2B Violations Only", "FY2011", "CMP Assessed"). From 2011 through April 2023, for alleged violations of the H-2B program, DOL has imposed more than $200,000 in CMPs against an employer on two occasions; between $100,000 and $200,000 on 14 occasions; between $10,000 and $100,000 on 365 occasions; and under $10,000 on 279 occasions. *See* U.S. Dep't of Labor, Wage and Hour Compliance Action Data (hereinafter, "DOL Data"). *Available at* https://enforcedata.dol.gov/views/data_summary.php .

    In addition to imposing CMPs for H-2B violations, DOL's ALJs also assess back wages that are purportedly owed to employees[3] of H-2B employers. From 2011 through 2018, DOL ordered H-2B employers to pay an average of $399,304.28 in back wages each year. From 2019

---

[3] Back wages are technically owed to the employees, but in many cases involving the H-2B program, they are collected by the agency. Employees must then affirmatively claim the funds from the government. If the funds go unclaimed for three years, the government keeps the money.
    In 2015, the DOL's Office of Inspector General found that DOL "made minimal efforts to locate" employees to whom it was supposed to pay back wages. U.S. Dep't of Labor, Office of Inspector General, *Wage and Hour Division Needs to Strengthen Management Controls for Back Wage Distributions* (Mar. 2015) < https://www.oig.dol.gov/public/reports/oa/2015/04-15-001-04-420.pdf >. As a result, between 2010 and 2014, the government kept $60 million in back wages that were collected by DOL and never paid to workers. *Id.*

through 2022, that annual average was $1,645,992.64. *Available at*

https://www.dol.gov/agencies/whd/data/charts/industries-h2b-workers (XLS,

"H2B Violations Only", "FY2011", "CMP Assessed").

From 2011 through 2022, DOL assessed a total of $9,634,636.29 in CMPs and

$9,778,404.80 in back wages in connection with the H-2B program. *Available at*

https://www.dol.gov/agencies/whd/data/charts/industries-h2b-workers (XLS,

"H2B Violations Only", "FY2011", "CMP Assessed").

**D. WHD's Investigation**

The relevant timeline is straightforward.

- November 7, 2012 – Employer applied to DOLETA for a labor certification of 246 H-2B workers to start working on February 1, 2013, and signed its attestations at the same time.  AR 1483, 1485, 1495 & 1503; AR 1504.
- December 14, 2012 – DOL approved Employer's labor certification.  AR 1516-1517.
- December 17, 2012 – Employer submitted its I-129 to USCIS, AR 1525, 1531, and it indicated that the job title was "Amusement and Recreation Attendants," AR 1529.
- January 4, 2013 – USCIS approved Employer's petition.  AR 1541.
- February 1, 2013 – H-2B workers began working for Employer. AR 1484 & 1497; AR 3022-3031; AR 3801 (relevant workers had arrived by Feb. 2, 2013, and payslips show them getting paid by Feb. 4, 2013).
- February 6, 2018 – Administrator mailed the determination letter.  AR 3801.

In March, 2013, a WHD inspector began investigating Employer for possible

wage-and-hour violations.  AR 1543.  The period of the investigation was February 1 through

April 24, 2013.  AR 1559.

This action is based exclusively on a purported violation of the applicable 2008 DOL

Rule.  AR 0768 (testimony of Ms. Aguilar); AR 2868 and 2869 (corporate rep deposition of Ms.

Aguilar).  There are no allegations that the 2015 IFR was violated, nor were there any FLSA or I-

129 violations, nor were any sub-regulatory guidance documents violated.  AR 0769, 0783 and

11

0798 (testimony of Ms. Aguilar).  There were multiple years during which there was no activity

in the investigation, a delay that coincided in part with the *vacatur* entered against the 2008 DOL

Rule.  .

Although required by DOL policy, the WHD inspector never followed DOL policy to

initiate a final conference at which the tentative findings would have been presented and

Employer's explanation would have been elicited.  Instead, the WHD inspector precipitously

issued a final determination letter on February 6, 2018.  AR 1559.  According to the letter,

Employer had committed a single violation of 28 C.F.R. §655.22 (n) by "plac[ing] workers in

occupation(s) other than listed" on Employer's application.  AR 1563.  The letter proposed

nearly $25,000 in back wages and $10,000 in civil money penalties.  *Id*.  The letter stated that

this amount had to be paid within 30 days and the only way to avoid that automatic assessment

was to request an appeal to DOL's in-house agency courts. AR 1560.The letter warned that "[i]f

[Employer] does not make a timely request for a hearing, this determination letter will become a

final order of the Secretary of Labor and may no longer be appealed."  AR 1561.

**E.  Agency Proceedings**

**1.  Before the ALJ**.  As required by DOL regulations, 20 C.F.R. §655.70 (c) (3),

Employer requested a hearing to contest the agency's assessment of penalties and back wages,

and to preserve its right to further appeals.  The ALJ's September 30, 2020, decision affirmed

WHD's determination that Employer violated the 2008 DOL Rule by employing nine individuals

to perform duties in addition to those performed by the other amusement and recreation

attendants.  With one minor adjustment in the calculated wage rate, the ALJ imposed the full

amount of liability charged in WHD's determination letter, nearly $26,000 in back wages and

$10,000 in civil monetary penalties. The ALJ ordered the Administrator to calculate any interest owed.

    **a.  The Statute of Limitations**.  Employer moved to summarily dismiss the case based on the five-year statute of limitations for penalties under 28 U.S.C. §2462.  Butler contended that the Administrator could charge the purported violation of 20 C.F.R. §655.22 (n) only as a willful misrepresentation "on the application" itself under the governing regulations, which meant that the Administrator could have first initiated action no later than Employer filing for DOLETA's labor certification on November 7, 2012, for willfully misrepresenting the job duties. Alternatively, the Administrator could have first initiated action no later than February 1, 2013, when the workers began working based upon substantially failing to employ nine workers in the prescribed job position.

    As a matter of law, the ALJ found a continuing violation through April 24, 2013, and found that the determination letter from February 6, 2018, was timely filed less than five years after the violation ceased.  The ALJ never addressed whether the only way to charge a violation of 20 C.F.R. §655.22 (n) was as a willful misrepresentation in the application itself, nor did the ALJ address the unique statutory requirement that the date of accrual is determined when the cause of action could "first" be maintained.  AR 0372.

    **b.  Offsets**.  Employer introduced undisputed evidence from the WHD inspector, as well as  Employer's corporate treasurer and president, that Employer paid the H-2B workers' obligations for income taxes.  Employer further introduced the company W-2s corroborating that Employer paid the workers' income taxes.  Employer also introduced undisputed evidence that Employer provided valuable facilities, including mobile housing, international or relocation travel, and local convenience travel for personal errands.

The ALJ rejected the claim that paying income taxes qualified as compensation toward wages. Although his reasoning is not clear, the ALJ appears to have regarded these wages as "credits," and then faulted Employer for citing no authority for these credits, even though Employer did not have the burden of proof. AR 3789.

**2. Before the ARB**. As required by the 2008 DOL Rule, 20 C.F.R. §655.75 (a), Employer appealed the ALJ's opinion to the ARB. On July 28, 2023, the ARB issued a decision affirming the ALJ in all respects. AR 3789.

The ARB rejected the five-year statute of limitations for penalties because it concluded there was a continuing violation. It rejected the statutory language and related case law that the five-year statute of limitations accrues when the action first could have been brought because it believed that the Administrator was free to choose a more-restrictive theory of the case (substantial failure rather than willful misrepresentation) that accrued later in time. AR 3789.

Finally, the ARB rejected Employer's claim for an offset for paying the income taxes for or providing other valuable facilities to its H-2B workers. The ARB did not directly discuss the payment of taxes as additional compensation. The ARB simply reiterated the ALJ's assertion that Butler had cited no authority for these "credits." AR 3789.

Thus, after Employer spent years and thousands of dollars defending itself in DOL proceedings prosecuted and presided over solely by DOL employees—under regulations DOL promulgated, then rescinded, and then resuscitated—it was ordered to pay $36,786 ($26,786 in back wages, $10,000 in CMPs).

**3. Post-ARB Enforcement Actions**. Some months after the ARB's decision, the Administrator sent notice that the ARB's decision and order for back wages of $26,786, interest of $25,659.50 based upon some undisclosed calculation, and CMPs of $10,000 remained

"owe[d]," but did not reveal the authority for that contention.  The letter continued that this amount was "due immediately."  The letter then advised that the Administrator "may" move to debar Butler from the H-2B program if this amount was not paid within 30 days from this "indicated date due."  The letter did not reveal the authority for that contention. A copy of the Administrator's enforcement letter has been provided.  Complaint, Exh. E.

A week before the Administrator's purported deadline, Employer's counsel telephoned the Administrator's representative to advise that it intended to appeal as it was entitled to do, and requesting the Administrator's position on a stay of any further enforcement activity.  The Administrator's representative indicated that she would address this issue the next day. Complaint ¶86.

One week later – the very afternoon of the Administrator's purported deadline – the Administrator's representative finally returned the phone call.  She disclosed to Employer that the Administrator was going to proceed with the further enforcement action outlined in the earlier letter.  When Employer asked a series of questions regarding the Administrator's efforts to obtain a debarment against Butler or staying those efforts pending appeal, the Administrator's representative declined to answer any of them on the basis that she had no information to offer. Complaint ¶87.

## ARGUMENT

## I.  STANDARD OF REVIEW, BURDEN OF PROOF AND REASONED DECISIONMAKING

The APA requires a reviewing court to hold unlawful and set aside any agency action, findings, or conclusions that are unconstitutional, without statutory authorization, or arbitrary, capricious, or not otherwise in accordance with law.  5 U.S.C. § 706(2); *see also Butte County,*

*Cal. v. Hogen*, 613 F.3d 190, 195 (D.C. Cir. 2010) (vacating agency action and granting

summary judgment because the agency failed to articulate a satisfactory explanation).

To establish a violation, the Administrator as the party seeking the Order bears the

burden of proof by a preponderance of the evidence for each of the elements.  5 U.S.C. § 556 (d),

*cited in Industrial Union Dep't v. American Petroleum Inst*., 448 U.S. 607, 653 (1980); *Steadman*

*v. Securities & Exch. Comm'n*, 450 U.S. 91, 102 (1981).

The agency's order must be based upon "reasoned decisionmaking."  *Judulang v. Holder*,

132 S. Ct. 476, 483-84 (2011).  "Reasoned decisionmaking" requires the agency to "cogently

explain why it has exercised its discretion in a given manner."  *Motor Vehicle Mfrs. Ass'n, Inc. v.*

*State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 47 (1983).  *See* 5 U.S.C. § 557 (c) (Under the

Administrative Procedure Act, the "record shall show the ruling on each finding, conclusion, or

exception presented," and this must include "the reasons or basis" for each finding and

conclusion "on all the material issues of fact, law, or discretion presented on the record ….").

Such an "expla[nation of] its reasons," *Motor Vehicle*, 463 U.S. at 56, must include a "basis"

why the agency rejected an available alternative, *id*. at 55.  Conclusory treatment of contrary

evidence "provides no basis upon which [to] conclude that it was the product of reasoned

decisionmaking."  *Butte County, Cal. v. Hogen*, 613 F.3d 190, 195 (D.C. Cir. 2010).  Thus, a

"summary discussion" or "conclusory statements" do not suffice, *Encino Motorcars, LLC v.*

*Navarro*, 136 S. Ct. 2117, 2125 (2016), nor do "[c]onclusory explanations" to contrary evidence

on central factual disputes, *International Union v. Mine Safety & Health Admin*., 626 F.3d 84,

84, 94 (D.C. Cir. 2010).  Inquiry into this issue "is to be searching and careful …."  *Citizens to*

*Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), *abrogated on other grounds,*

*Califano v. Sanders*, 430 U.S. 99 (1977).

## II.  THE 2008 DOL RULE IS UNENFORCEABLE

There is no dispute that the 2008 DOL Rule was permanently enjoined as well as vacated in early 2015. *Perez v. Perez*, No. 3:14-cv-00682, 2015 U.S. Dist. Lexis 27606, at *7-8 (N.D. Fla. Mar. 4, 2015)(the 2008 DOL Rule is "VACATED and [DOL is] permanently enjoined from **enforcing** it.") (emphasis added).  The only dispute is whether a subsequent "clarification" somehow resuscitated it.  Because DOL is enforcing the 2008 DOL Rule without lawful authority, the proper remedy is *vacatur*. *See* 5 U.S.C. § 706(2)(A), (C).

### A.  The Nature of the *Vacatur* Precludes Its Enforcement

We begin with some observations regarding *vacaturs*.  Both the injunction and *vacatur* remedies were sustained by separate rationales.  As to the vacatur, this was granted "[f]or the [same] reasons set forth in" the order vacating the 2012 H-2B regulations, namely:

> DOL lacks authority to engage in legislative rulemaking under the H-2B program, and therefore lacked authority to enact the 2008 regulations at issue in this suit, such that [plaintiff] is entitled to judgment as a matter of law.

*Perez v. Perez,* at *6 (Mar. 4, 2015).  As to the injunction, the federal court found "DOL's continued use of its 2008 regulations will irreparably injure" plaintiff, and that "no remedy at law will provide protection against further implementation of DOL's 2008 H-2B regulations apart from the requested injunctive relief."  *Id*. at *7.

Next, having determined that the 2008 DOL Rule was issued without statutory authority, full-throated *vacatur* was the mandatory remedy, 5 U.S.C. § 706 (2) (the court "shall … hold unlawful and **set aside** agency action … found to be … in excess of statutory jurisdiction [or] authority") (emphasis added); *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 413-14 (1971) ("**In all cases** agency action must be set aside … if the action failed to meet statutory, procedural, or constitutional requirements.") (emphasis added), and this was especially

true when the federal court found that the 2008 regulations were issued without authority, *e.g.,*
*Defenders of Wildlife v. Jackson*, 791 F. Supp. 2d 96, 117 (D.D.C. 2011) (substantive infirmity
"mandates" *vacatur*); *AFL-CIO v. Chao*, 496 F. Supp. 2d 76, 91 (D.D.C. 2007) (same).

      Moreover, the *vacatur* was necessarily retroactive. "The principle that statutes operate
only prospectively, while judicial decisions operate retrospectively, is familiar to every law
student." *United States v. Sec. Indus. Bank*, 459 U.S. 70, 79 (1982). With a few exceptions not
relevant here, the Supreme Court has been quite clear that judicial rulings necessarily apply
retroactively. *Rivers v. Roadway Express, Inc*., 511 U.S. 298, 311-12 (1994); *Heartland
Regional Med. Ctr. v. Sebelius*, 566 F.3d 193, 196 (D.C. Cir. 2008) ("a principle announced in
adjudication is necessarily retroactive"); *Neustar, Inc. v. Federal Communications Comm'n*, 857
F.3d 886, slip op. at *20-21 (D.C. Cir. 2017) (case law mandating that judicial decisions have
retroactive effect); *National Fuel Gas Supply Corp. v. FERC*, 59 F.3d 1281, 1289 (D.C. Cir.
1995) (*vacatur* of agency action by federal court must be given retroactive effect). *See generally*
Once the federal court ruled that the 2008 DOL Rule was invalid, it **automatically** meant that
they had never existed, *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 758-59 (1995) (court
cannot use its remedial discretion to avoid retroactive application of a judicial decision), and the
benefit of that ruling extended to non-parties. The DOL's position leads to exactly the sort of
disparate treatment that the Supreme Court eschews: Some are bound and some are not by the
2008 DOL Rule. *See, e.g., James M. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 538 (1991)
(plurality opinion).

      According to the Department of Labor itself, "[t]he Court's March 4, 2015, *vacatur* order
has the effect of setting aside DoL's 2008 rule and taking it 'off the books.'" Defendants'
Unopposed Motion for Limited Relief from the Vacatur Order and Judgment, *Perez v. Perez*, No.

3:14cv682, at *8 (N.D. Fla. Mar. 16, 2015) (Doc. 16) (*citing Heartland Regional Center v. Sebelius*, 566 F.3d 193, 198-99 (D.C. Cir. 2009) and *AFL-CIO v. Chao*, 496 F. Supp. 2d 76, 92 (D.D.C. 2007) ("vacatur takes the rule off the books")). *See also Heartland*, 566 F.3d at 199 ("'To "vacate" … means "to make of no authority or validity."'") (*quoting  Action on Smoking & Health v. Civil Aeronautics Bd*.,  713 F.2d 795, 797 (D.C. Cir. 1983)).

The 2008 DOL Rule was originally taken "off of the books" and were no longer enforceable as of March 4, 2015.  At that moment in time, there was nothing left to replace or an opportunity to resuscitate something that no longer existed.

**B.  DOL Itself Interred the 2008 DOL Rule by Replacing and Superseding It**

Rather than reinstating the 1968 H-2B regulations, DOL announced that it was "immediately … [ceasing to] accept or process requests for prevailing wage determinations or applications for labor certification in the H-2B program." *Foreign Labor Certification News* (Mar. 4, 2015).  Because of the *vacatur*, DOL also immediately ceased all enforcement actions based on the 2008 H-2B regulations.  *Transcript of Motion Proceedings Before the Honorable M. Casey Rodgers* at 31 (Apr. 22, 2015) ("The very evening that you entered judgment, the Defendants in this case communicated to all their operations and enforcement folks that they **could no longer take any other actions under the 2008 rule**, and that's exactly what we did ….")(emphasis added).  This was followed by an announcement in which DOL indicated the singular impact of the *vacatur*:

> To rectify the **regulatory gap** that the **vacatur has caused**, DOL and DHS are working expeditiously to issue a joint Interim Final Rule ….  DOL will seek to determine whether relief from the Court's decision may be obtained such that processing can continue during the period of time before an IFR is promulgated.

*Foreign Labor Certification News* (Mar. 16, 2015) (emphasis added).

19

Concurrently, DOL filed an "Unopposed Motion for Limited Relief from the **Vacatur** Order and Judgment." *Perez v. Perez*, No. 14-682 (N.D. Fla. Mar. 16, 2015) (ECF Doc. 16, at *1) (emphasis added). As DOL stated repeatedly, the sole cause for the "complete shutdown" of the H-2B program and the resulting "emergency situation" was the Court's "***vacatur* order.**" *Id.* (emphasis added). This was because the "*vacatur* order," and only the *vacatur*, had created a "regulatory hiatus" by "setting aside DOL's 2008 rule and taking it 'off the books.'" *Id.* Because the culprit was the "*vacatur* order" and the need to "com[e] into compliance with the Court's *vacatur* order," DOL only requested relief from the *vacatur* "in the form of a stay of the *vacatur* mandate." *Id.* It is important to note that DOL did **not** request the stay so that it could resume prosecuting enforcement actions, and there appears to have been an absence of WHD's enforcement activity during the stay. Based on DOL's representations, the federal judge granted the motion for limited relief from the vacatur order and judgment, and "STAYED or otherwise held in abeyance" that order. *Perez v. Perez*, No. 14-682, slip op. at *4 (N.D. Fla. Mar. 18, 2015) (ECF Doc. 19).

Even after the stay, DOL remained consumed by the *vacatur*, and only the *vacatur*. Several weeks later, DOL filed a motion to clarify "the stay of the *vacatur* of the 2008 rule." *Perez v. Perez*, No. 14-682 (N.D. Fla. Apr. 3, 2015) (ECF Doc. 29, at *1, 2). To expedite OMB processing of the proposed replacement rule, DOL claimed that "emergency processing" was necessary because the federal court had "vacated" the 2008 H-2B regulations, and that the *vacatur* "prevents the Employment and Training Administration's Office of Foreign Labor Certification from accepting or processing H-2B applications …." Memorandum from Employment and Training Admin., *Request for Emergency Approval of an Information*

*Collection* at 1 (c. Apr. 3, 2015).  And at oral argument on open motions, DOL again fixated on

the *vacatur*:

> The vacatur addressing a rule means that that rule is now off the books.  It's been stricken.  It does not exist.  And we treated Your Honor's order in just that way when you entered judgment.
>
> The very evening that you entered judgment, the Defendants in this case communicated to all their operations and enforcement folks that they **could no longer take any other actions under the 2008 rule**, and that's exactly what we did ….
>
> … But when the vacatur is in effect and the stay is lifted, we will do exactly as we did when judgment was entered, we will simply cease operating the program under the 2008 rule in accordance with your order.

*Transcript of Motion Proceedings Before the Honorable M. Casey Rodgers* at 31, 40 (Apr. 22,

2015) (emphasis added).

During the stay, DOL decided that it would replace the 2008 DOL Rule with brand-new

regulations, so it started laying the groundwork for the impact of staying the *vacatur* on the

replacement regulations.  To expedite OMB processing of the new regulation, DOL pointed out

that "The H-2B Comprehensive IFR **replaces** the 2008 regulations with the regulations the

administration promulgated in 2012, with slight modifications."  Memorandum from

Employment and Training Admin., *Request for Emergency Approval of an Information*

*Collection* at 1 (c. Apr. 3, 2015) (emphasis added).  *See also* DOL Press Release, *New Rules for*

*the H-2B Visa Program Announced by the US Departments of Labor and Homeland Security*

(Apr. 28, 2015) (the 2015 "Comprehensive" H-2B regulations "reinstate … the H-2B program").

To avoid confusion between the stay and the replacement regulations, DOL requested

> Because the DHS-DOL joint rule will **replace** DOL's 2008 rule, the stay of the *vacatur* of the 2008 rule in this case should automatically terminate on the day the DHS-DOL joint rule is published to avoid any confusion about the operative effect of the new DHS-DOL joint rule.

*Perez v. Perez*, No. 14-682 (N.D. Fla. Apr. 24, 2015) (ECF Doc. 46, at *2) (emphasis added).

Just as it previewed, DOL was very plain that the 2015 H-2B regulations "immediately replace[ ] the 2008 rule."  80 Fed. Reg. 24042, 24049 (Apr. 29, 2015).  DOL knew that employers would be able to defend against enforcement actions under the 2008 H-2B regulations, and planned accordingly.  DOL's policy choice to jettison rather than salvage the 2008 H-2B regulations was an integral element in justifying "good and substantial cause to issue this rule immediately" without notice and comment and with an immediate effective date.  *Id.* at 24047, 24049.  As part of its justification for abandoning normal notice and comment, DOL conceded the obvious impact of the *vacatur* on the 2008 H-2B regulations, which

> **remain[ed] vulnerable** to challenges by employers **in current and future enforcement proceedings** based on the ground that **the regulations DOL is seeking to enforce are void** because DOL exceeded its statutory authority in unilaterally issuing the 2008 rule …. Therefore, employers subject to enforcement under the 2008 rule **have an available defense that DOL is without regulatory authority to enforce rights and obligations in the H-2B program**, leaving DOL in an untenable position with respect to its ability to require adherence to program standards.

*Id.* at 24048-49 (emphasis added).  Because of this inability to prosecute employers in enforcement actions under the void 2008 DOL Rule, DOL adopted a new enforcement practice under which "if the temporary stay is lifted, **the vacatur of DOL's 2008 rule will void the enforcement regime** by which DOL has carried out its statutorily-delegated enforcement authority."  *Id.* at 24047 (emphasis added).

On April 30, 2015, the court lifted the stay because the 2015 H-2B regulations had "replace[d] the H-2B regulations at issue in this case."  *Perez v. Perez*, No. 14-682 (N.D. Fla. Apr. 30, 2015) (ECF Doc. 49, at *2).  *See also Statement of Portia Wu, Assistant Secretary for Employment and Training, Before the Senate Comm. on Small Business & Entrepreneurship* at 4 (May 6, 2015) (the court "lifted the stay of its vacatur of DOL's 2008 rule because DOL and DHS **replaced** it with a new **comprehensive** H-2B rule ….")  (emphasis added).

For a period of months, DOL implemented its new practice, first articulated in the preamble to the 2015 H-2B regulations, that it would no longer pursue any enforcement actions for alleged violations of the 2008 H-2B regulations.  *See, e.g.*, *Perez v. Perez*, No. 14-682 (N.D. Fla. Aug. 28, 2015) (ECF Doc. 58, at *2) (according to plaintiff, DOL has indicated that it is complying with the injunction barring "enforcement" of the 2008 H-2B regulations for labor certifications issued before the injunction); *Perez v. Perez*, No. 14-682 (N.D. Fla. Sept. 4, 2015) (ECF Doc. 60, at *3) (according to DOL, "beginning on May 8, 2015, DOL moved to dismiss without prejudice several regulatory enforcement actions"); *Administrator v. Southwest Commodities*, 2015-TNE-00010 (OALJ May 8, 2015) (sample Administrator's motion to dismiss).  During this time, DOL's policy continued to be as it had stated in the previous oral argument that

> the order to vacate – and therefore remove from the books – the 2008 Rule and bar[red DOL] from taking **any future action to enforce** the Rule.
> By removing the 2008 Rule from the books, DOL can **no longer enforce any *regulatory* obligations** imposed on employers under that Rule.
> … [The *vacatur* order] **prohibit[s] any new enforcement action** under the Rule.

*Perez v. Perez*, No. 14-682 (N.D. Fla. Sept. 4, 2015) (ECF Doc. 60, at *1-2 & 2 n. 1) (emphasis in bold added) (emphasis in italics in original).  DOL has never issued a public notice or comment that it was rescinding this prior practice.

The well-established rule is that a regulation ceases to have operative effect when it is replaced by another regulation.  This is the rule from *Abington Memorial Hosp. v. Heckler*, 750 F.2d 242, 244 (3d Cir. 1984), and it has been repeatedly followed.  *E.g.*, *Mason Gen. Hosp. v. Secretary of the Dep't of Health & Human Servs*., 809 F.2d 1220, 1223 (6th Cir. 1987); *Menorah Med. Ctr. v. Heckler*, 768 F.2d 292 (8th Cir. 1985); *Lloyd Noland Hosp. & Clinic v. Heckler*, 762 F.2d 1561, 1569 (11th Cir. 1985).  *See also Center for Science in the Pub. Interest v. Regan*, 727

F.2d 1161, 1164 (D.C. Cir. 1984) (subsequent regulation "displaced" or "superseded" a prior regulation, and the prior regulation became "a dead letter, and cannot be revived").  This rule applies because the 2015 IFR replaced the 2008 DOL Rule.  This fact is stated in the 2015 IFR itself, was the pivotal reason why the federal court lifted its stay – thereby raising judicial estoppel because DOL benefited from its political calculation to use a crisis to jettison an unwanted regulation, and is also reflected in numerous other contemporaneous administrative and litigation records.  The Secretary of Labor might have resurrected the 2008 H-2B regulations merely by sanctioning them in a legitimate rulemaking proceeding, but once the Secretary of Labor chose to rush through with a replacement and to forgo public notice and comment, enforcement actions based upon the 2008 H-2B regulations were doomed and the policy dice were cast.

Further, rescinding the DOL's replacement of the 2008 DOL Rule required its own rulemaking.  DOL's position amounts to an extra-legal effort to promulgate a rule.  If the Secretary of Labor wants to establish a rule in light of the "clarification" order, then he should follow the prescribed steps for public notice and comment.  Until that day comes, there is no such regulation for DOL to enforce.  *See American Trucking Ass'ns, Inc. v. Frisco Transp. Co*., 358 U.S. 133, 146 (1958) (agency may not use the "pretext" of "reopen[ing] prior proceedings to correct a[n inadvertent] mistake," then use the occasion to "execute a subsequently adopted policy."); *Cumberland Med. Ctr. v. Secretary of Health & Human Servs*., 781 F.2d 536, 539 (6th Cir. 1986) (rescinding a rule requires the same steps as promulgating a rule).

More to the point, an agency cannot "retroactively repeal its own enactment."  *Arizona Grocery Co. v. Atchison, Topeka & Santa Fe Ry*., 284 U.S. 370, 389 (1932).  In other words, having replaced the 2008 DOL Rule, DOL was no longer free to repeal its rescission, and took

no such efforts under the APA. The Secretary of Labor has not initiated rulemaking proceedings to repeal its replacement of the 2008 DOL Rule, so the 2008 DOL Role cannot be resuscitated. *Action on Smoking & Health v. Civil Aeronautics Bd*., 713 F.2d 795, 798 (D.C. Cir. 1983) (*per curiam*) (an agency may not revoke a rule without engaging in proper rulemaking).

Further, the error is compounded when judicial officers, who are "bound to recognize the validity of the rule of conduct prescribed by it," effectively take action "to repeal its own enactment with retroactive effect." *Id.* In effect, the ALJ in this case was placed in a situation where he was forced to engage in illegality. The very act of making the ruling to enforce the 2008 DOL Rule was illegal.

The Administrator will undoubtedly contend that the ARB and the subordinate ALJs were not authorized to rule upon the validity of the 2008 DOL Rule. That means that the time has come to stop passing the buck and bury the 2008 DOL Rule.

## C. The "Clarification" Order Did Not Make the 2008 DOL Rule Enforceable

On August 28, 2015, plaintiff filed an "Unopposed Motion to Clarify Permanent Injunction." **Appx 102,** *Perez v. Perez*, No. 14-682 (N.D. Fla. Aug. 28, 2015) (ECF Doc. 58, at *1). By this point, the vacatur was a final judgment for some months. No pretense was made to justify this grossly-late filing. And because the motion was unopposed, it was effectively a request for an advisory opinion.

It is important to distinguish what the motion does **not** do from what it does. The motion takes no issue with the *vacatur* remedy; in fact, the only reference to a *vacatur* of any type occurs in the context of an unrelated case. *Id*. The unstated premise for the motion is that the sauce-for-the-goose-is-sauce-for-the-gander approach that plaintiff successfully argued to the federal court to apply the same reasoning to vacate the 2008 DOL Rule as it did to the 2012 DOL

Rule, did not apply to the same remedy.  Thus, the motion misleadingly focuses exclusively on the injunctive relief.  The plaintiff requested that the court clarify that the permanent injunction against enforcing the 2008 DOL Rule "was not intended to deprive DOL of its authority to enforce compliance with the substantive work terms contained in labor certifications issued pursuant to the 2008 Regulation <u>prior to the entry</u> of the Court's permanent injunction."  *Id.* (emphasis in original).  Accordingly, plaintiff sought an order clarifying that the "permanent injunction … only enjoined DOL from using the 2008 regulations to issue new labor certifications for H-2B workers and did not enjoin DOL from using its enforcement powers to ensure compliance with the terms and conditions of work promised in labor certifications approved prior to the effective date of the Court's injunction."  *Id.*

In response, DOL refrained from taking a position and merely recounted the impact of the *vacatur* and DOL's inability to pursue enforcement actions.  DOL did not submit a proposed order, but it contended that it could continue to enforce some undefined obligation pursuant to delegated enforcement authority under 8 U.S.C. § 1184 (c) (14) (B), *id.* , Doc. 60, at 2, a vagueness that allowed it to pick and choose its position later.

The federal court ruled on plaintiff's motion to clarify the permanent injunction by stating in its entirety:

> The relief requested is GRANTED.  The Court clarifies that the **permanent injunction** was not intended to, and does not, apply **retroactively**.

*Perez v. Perez*, No. 14-682 (N.D. Fla. Sept. 4, 2015) (ECF Doc. 62, at *1) (emphasis added).

What does this single-line "clarification" tell us?  Nothing significant, which is exactly to be expected with a request for an advisory opinion for interpreting a final judgment.  And most assuredly, the Court did not countenance the *carte blanche* enforcement requested by the plaintiff, or the vague non-relief requested by DOL.

Although the "clarification" addressed at least obliquely the Court's injunction, the "clarification" said utterly nothing regarding the *vacatur* remedy.  The 2008 regulations remain just as much "off the books" today as they were on March 4, 2015.  As such, there is still nothing to enforce.

The "clarification" also says nothing significant regarding the additional remedy of injunction.  Injunctions are, by definition, prospective and directed to future conduct; it is not the role of an injunction to address prior conduct.  *Cf. National Fuel Gas Supply Corp. v. FERC*, 59 F.3d 1281, 1289 (D.C. Cir. 1995) (*vacatur* of agency action by federal court must be given retroactive effect).  To be sure, any DOL attempt to enforce the 2008 DOL Rule today remains a violation of that injunction, which is precisely why DOL's actions speak louder than its words.

The federal court's "clarification" is clear on the only pertinent fact: The federal court made no attempt to alter the *vacatur*.  The federal court deployed 2 overlapping yet distinct remedies.  A *vacatur* is a form of equitable relief.  *Black Warrior Riverkeeper, Inc. v. Army Corps of Eng'rs*, 781 F.3d 1271, 1290 (11th Cir. 2015).  A *vacatur* both "preserves" the *status quo*, *AFL-CIO v. Chao*, 496 F. Supp. 2d 76, 92 (D.D.C. 2007), and "suspends" the duty to comply, *Alabama Power Co. v. United States Env'tl Protection Agency*, 40 F.3d 450 (D.C. Cir. 1994) (*vacatur* suspends the duty to comply).  As we have seen, a *vacatur* is the mandatory remedy for proceeding without lawful authority.  This contrasts with an injunction, which is "[a] court order commanding or preventing an action" that "operat[es] *in personam.*"  *Black's Law Dictionary* 904 (Bryan A. Garner ed. 10th ed. 2014).  Injunctions are, by definition, prospective and directed to future conduct; it is not the role of an injunction to address prior conduct.  An injunction is a "classic example of judgments that have prospective application."  Joseph T. MacLaughlin, *Relief from a Judgment or Order*, in 12 James W. Moore, *Moore's Federal*

*Practice* § 60.47 [1] [d], at 60-174 (3d ed. 2017).  In adopting this belt-and-suspenders approach,

the federal court was careful to point out that each remedy was tailored to serve a different legal

need; they were not redundant remedies.  *See Kinkead v. Humana, Inc*., 206 F. Supp. 3d 751, 754

(D. Conn. 2016) (*vacatur* sets aside "entire rule, not merely to preclude its enforcement in a

particular case").  So, when the federal court entered its clarification of the injunction, it said

utterly nothing regarding the primary remedy of *vacatur*.

The federal court had no basis for modifying the retroactive *vacatur*.  The federal court

never perfected a basis for substantively modifying the prior judgment, which had been final for

some months.  Under Fed. R. Civ. Proc. 60 (a), the federal court could have corrected clerical

errors, but that option cannot be used to make substantive changes, such as those later advocated

by DOL.  Joseph T. MacLaughlin, *Relief from a Judgment or Order*, in 12 James W. Moore,

*Moore's Federal Practice* § 60.11 [1] [c], at 60-34 to -36 (3d ed. 2017) (clarification is limited to

non-substantive clerk's errors).  To make the substantive changes that DOL claims, the federal

court had to proceed under Fed. R. Civ. Proc. 60 (b), and was obligated to make supporting

findings regarding such facts as mistakes, inadvertence, fraud, etc.  Having failed to make any

supporting findings, DOL has not established a basis for the substantive change it claims.

Even the ARB has acknowledged that the 2008 DOL Rule is unenforceable.  *Compare*

*Administrator v. Strates Shows, Inc*., No. 15-069, slip op. at *6 (ARB June 30, 2017) ("vacatur of

the 2008 H-2B regulations rendered the Administrator's legal authority for pursuing the present

action null and void."), *vacated*, *id*., slip op. at *2 (ARB Aug. 16, 2017), *with id*., slip op at *2

(ARB Aug. 16, 2017) ("omitting the characterization of the 2008 H-2B regulations as

unenforceable").  Despite its later tentativeness, the ARB's original ruling that the 2008 DOL

Rule was not enforceable – without reversing the prior decision – is correct and remain

persuasive law.  *See County of Los Angeles v. Davis*, 440 U.S. 625, 646 n. 10 (1979) ("Although a decision vacating a judgment necessarily prevents the opinion of the lower court from being the law of the case, … the expressions of the court below on the merits, **if not reversed**, will continue to have precedential weight and, until contrary authority is decided, are likely to be viewed as persuasive authority if not the governing law of the [lower appellate court].") (emphasis added).

Regardless of any efficacy in the "clarification," it cannot overcome the fact that DOL itself repealed the 2008 DOL Rule by adopting replacement regulations.  There was nothing left to clarify because the replacement regulations effectively mooted the 2008 DOL Rule.  *See, e.g.*, *Bayou Lawn & Landscape Servs. v. Secretary of Labor,* No. 15-10623, slip op. at *4 (11th Cir. Nov. 5, 2015) (remanding for trial court to determine whether replacement of 2012 H-2B regulations by the 2015 H-2B regulations mooted the appeal).

**D.  The 2008 DOL Rule Should Be Vacated – Again**

Even if the doubly-dead, vacated-and-replaced 2008 DOL Rule could be resuscitated by a federal judge's unauthorized restriction on a mandatory *vacatur* remedy, now is the time – once and for all – to determine that the same set of regulations apply to all alike.  Because Congress never mentioned, much less bestowed rulemaking or adjudicative authority, this Court should also vacate further enforcement of the 2008 DOL Rule.

**III.  THIS ACTION IS TIME-BARRED BY THE STATUTE OF LIMITATIONS**

The statute of limitations contained in 28 U.S.C. § 2462 time bars in this claim as a matter of law.  It provides that "an action, suit or proceeding for the enforcement of any civil fine, *penalty*, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years *from the date when the claim first accrued* …."  (Emphasis added).  It is well

recognized that this statute applies in administrative enforcement actions.  The primary dispute appears to be meaning of the phrase "from the date when the claim first accrued."  Before addressing those issues, it is first necessary to analyze the elements of the sole count.

     **1. Elements of the Claims**.  It is widely recognized that the proper application of the statute of limitations necessitates considering the elements of each claim.  *E.g.*, *DLS Precision Fab LLC v. U.S. Immigration & Customs Enforcement*, 867 F.3d 1079, 1085 (9th Cir. 2017) ("The date of accrual depends on the type of claim asserted."); *Clinic v.  Hamann*, 808 N.W.2d 828, 836 (Minn. 2011) (must consider nature of conduct to determine accrual); *Hamer v. City of Trinidad*, 924 F.3d 1093, 1096-97 (10th Cir. 2019) (how a violation occurs affects the statute of limitations).

     Under 20 C.F.R. §655.22 (n), WHD had the burden of proving (1) a misrepresentation of specified facts "on the application," (2) with scienter (a knowing and willful violation), and (3) a significant deviation.

     **2. Back Wages Are a "Penalty."**  A unanimous Supreme Court recently established a two-part test for identifying when a remedy is a "penalty."  *Kokesh v. Securities & Exch. Comm'n*, 137 S. Ct. 1635 (2017).  In *Kokesh*, the SEC sought disgorgement from the wrongdoer to deprive him of the profit from violating the law.  *Id*. at 1640.  The Supreme Court held that a "sanction" is a "penalty" under § 2462 when (1) the wrong is to the public, not an individual, and (2) the remedy is sought for the purpose of punishment and deterrence of others, not compensation.  *Id*. at 1642.  The Supreme Court starkly indicated that the remedy is compensatory, not a penalty, if the liability is imposed "**solely**" to redress a private injury and paid "**entirely**" to a private plaintiff.  *Id*. at 1643 (emphasis added).  Labeling a defendant as a wrongdoer showed the remedy was punitive.  *Id*. The Supreme Court had no problem

determining that the disgorgement was a penalty: It was pursued as a violation of public law against the United States, not an individual; It was done for the purpose of punishment and deterrence; and it was not compensatory because some of the funds went to the victims and some went to the U.S. Treasury, and there was no mandate to pay the victims. *Id*. at 1643-44.

DOL does not dispute that back wages, to say nothing of CMPs, are not "solely" compensatory. First, DOL long ago determined that the immigration statute authorized "sanctions" *in globo*. 73 Fed. Reg. 29942, 29945 n. 4 (May 22, 2008); 73 Fed. Reg. at 78020, 78023 n. 4 (Dec. 19, 2008). Backpay was just one of various available "penalties." 73 Fed. Reg. at 29955 & 29970; 73 Fed. Reg. at 78022, 78023. DOL specifically noted that backpay is a "sanction" because it reduces the *incentive to bypass U.S. workers* and *prevents wage depression* – classic punitive objectives. *See* 73 Fed. Reg. at 78047. DOL noted that willfulness was the "standard for the severity of wage violations," and favorably noted that backpay was a "penalty" under the H-1B program. *Id*. Backpay was also the gateway to still more penalties: DOL had the prerogative of referring violations to the Department of Justice, 73 Fed. Reg. at 78043, and the failure to pay "sanctions" could result in debarment, *id*. at 78061.[4]

Second, the punitive nature of backpay is further apparent when the statute and regulations are considered in context. To begin, violating a DOL regulation, including the

---

[4] Every supporting case that DOL's rulemaking relied upon similarly recognized that backpay serves a dual purpose of punishment and compensation. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 417-18, 421, 422 (1975) ("the reasonably certain prospect of a backpay award … provides the spur or catalyst which causes employers and unions to self-examine and to self-evaluate their employment practices ….") (a statutory purpose of backpay is eradicating discrimination) (backpay award based on a showing of bad faith is "a punishment for moral turpitude rather than a compensation for workers' injuries"); *id*. at 451 (Burger, CJ, concurring in part and dissenting in part) (backpay based on bad faith provides incentive to eliminate marginal practices); *Commonwealth v. Donovan*, 704 F.2d 288, 294 (6th Cir. 1983) (back wages are "sanctions"); *City of Philadelphia v. U.S. Dep't of Labor*, 723 F.2d 330 (3d Cir. 1983) (same); *United States v. Duquesne Light Co*., 423 F. Supp. 507, 509 (W.D. Pa. 1976) (backpay provides incentive not to discriminate).

obligation to pay backpay, is a *crime*; the INA criminalizes hiring an alien who DHS has not authorized to be so employed.  8 U.S.C. §1324a(h)(3).  This has resulted in more than 70 criminal investigations for failing to comply with DOL's H-2B regulations.  Office of Inspector General, *Recommendations for Enhancing Forms Used for H-2B Non-Agricultural Temporary Workers*, Rep. No. 50-19-001-03-321, at 2 (2019).  Next, the *scienter* requirement of a knowing or reckless violation is necessarily a penalty. *United States v. Searcy*, 965 F.3d 287, 299 (4th Cir. 2020).  Further, a finding of back wage liability is an escalator for future penalties, 29 C.F.R. § 655 .31 (d) (1) (i) & (d) (4), as well as a multiplier of civil monetary penalties, *id*. § 655.65 (g) (1 & 7).  Moreover, DOL's regulations and agency practice are riddled with discretion, which is a hallmark of a penalty.  *See Gonzalez v. Sessions*, 894 F.3d 131, 139 (4th Cir. 2018).  DOL has the discretion to determine

- Whether to impose back wages.  73 Fed. Reg. at 78064 (if wages are not paid, DOL "may" require back wages to comply).

- How back wages are paid.  *Id*. at 78065 (payment of back wages must follow WHD's procedures).

- To whom back wages are paid.  There is no statutory or even regulatory requirement to pay employees, nor are back wages paid to U.S. workers.

- The amount imposed through reconstructed work hours.

This is anything but a "set amount."

Third, WHD's agency practices further underscore that back wages are penalties.  There is a significant opportunity for back wages to be retained by the U.S. Treasury, which is a telltale sign of a penalty.  *See Kokesh*, 137 S. Ct. at 1643-44.  WHD retains H-2B back wages for 3 years, after which time, "if we remain unable to find the [employee], we are required to send the money to the U.S. Treasury."  Wage and Hour Division, *Workers Owed Wages* (visited Feb. 20, 2021) < https://webapps.dol.gov/wow/ >.  The results of audits are compiled and any back wage

calculations are publicized (along with the employer's name) to the world as "violations."  U.S.

Department of Labor, *Data Enforcement* (visited Feb. 20, 2021) (click "search form"; select

"WHD Cases" dataset; search by "Year" (enter 2009-2021); search by "Violation" (enter "Show

records with violations"); search by "Violation by Act" (enter "H-2B Non-Immigrant Workers");

search by "Back Wages Agreed to Pay") < https://enforcedata.dol.gov/views/searchChooser.php

>.  This publicity is a warning to others, which is a classic penalty.  *Gonzalez*, 894 F.3d at 138.

It is also a penalty because it forces employers to confront the harm caused, *United States v.

Zukerman*, 897 F.3d 423, 432 (2d Cir. 2018), and it labels them as wrongdoers, *Kokesh*, 137 S.

Ct. at 1643.

   Fourth, the punitive nature of back wages is also apparent when the statutory purposes

are considered.  See §II.B.  In this case, the H-2B workers to whom these back wages would be

paid are not even a protected class, but merely a conduit to safeguard the true protected class by

reducing the incentive to bypass U.S. workers and avoid wage depression.  *See* 73 Fed. Reg. at

78047.

   **3. All Claims During the 2013 Season Accrued Before February 6, 2013**.  Because

WHD's determination letter was mailed on February 6, 2018, the claim in this case is time-bar if

it accrued before February 6, 2013.  For more than a century, claims have accrued "at the

moment a violation occurs."  *3M Co. v. Browner*, 17 F.3d 1453, 1461-62 (D.C. Cir. 1994).  This

reflects the most recent Supreme Court rulings and their progeny.  "A claim accrues 'when the

plaintiff has *a* complete and present cause of action.'"*Gabelli v. Securities & Exch. Comm'n*, 568

U.S. 442, 448 (2013) (emphasis added) (*quoting Wallace v. Kato*, 549 U.S. 384, 388 (2007)).  In

other words, a claim accrues as soon as the plaintiff can sue and obtain some relief.  *Sierra Club

v. Oklahoma Gas & Elec. Co*., 816 F.3d 666, 673 (10th Cir. 2016).  And once the statute of

limitations accrues, it continues unabated from that moment in time for the next 5 years. *Securities & Exch. Comm'n v. Cohen*, 332 F. Supp. 3d 575, 588 n. 6 (E.D.N.Y. 2018) (the statute of limitations is complete and continues to run regardless of whether there was "evidence of subsequent misconduct.").

      **a. Any Violation Accrued When Employer Submitted Its Application.**  To begin, DOL has continued to ignore the fact that a citation for violating 20 C.F.R. § 655.22 (n) can *only be pursued as a willful misrepresentation*.  This is the only interpretation of § 655.22 (n), which can be violated only if specified information is not "truly and accurately stated *on the application*."  (Emphasis added).  Necessarily, the only relevant moment in time occurred on November 7, 2012, when Employer submitted its application, and that is when DOL was required to act.  Whether the Employer arguably failed substantially to comply with this particular language months later has no evidentiary bearing on whether the Employer misrepresented the contents "on the application."

      Necessarily, the regulatory requirement is the very definition of a "misrepresentation." AR 0796 (testimony of Ms. Aguilar) (misrepresentation occurs in the application when submitted); AR 0808-0809 (the 2008 Rule required a misstatement in the #9142 itself).  The Secretary of Labor acknowledged as much by indicating that the only method within the 2008 DOL Rule for charging employers when H-2B workers served outside of the approved job duties was through willful misrepresentations in the application.  AR 3448; AR 3543; AR 0800-0801 (testimony of Ms. Aguilar) (interpreting Exhs. 96 and 101).  This means that there is a gap in the 2008 DOL Rule that prohibited WHD from charging a "substantial failure," but WHD only did so anyway.  *Id*.  A "substantial failure" occurs when the employer fails to perform the terms and

conditions of the ETA Form 9142 during the following season, AR 0796-0797, which is necessarily after the application is submitted.

Even more telling, DOL chose to ignore the compelling text in § 2462, under which a proceeding must be brought within 5 years   "from the date when the claim *first accrued* …." 28 U.S.C. § 2462 (emphasis added).  Modern case law has now established when a claim such as this one "first accrues."  The moment of the violation was necessarily when Employer submitted its application.  That is the moment, the "first" moment, and the only moment when WHD could have initiated this action and obtained some relief.

There are certain analogous cases that point the way.  First, because of the *scienter* requirement, the discrimination cases are illustrative.  *Ledbetter v. Goodyear Tire & Rubber Co*., 550 U.S. 618, 624-25 (2007) (when the only acts of discrimination preceded the statute of limitations, the fact that the discrimination had an adverse impact on subsequent paychecks did not give rise to new violations with each paycheck).  The impact on subsequent paychecks is handled differently than FLSA claims because FLSA claims do "not require proof of specific intent to discriminate."  *Id*. at 641.  *See also Lewis v. Chicago*, 130 S. Ct. 2191, 2199-200 (2010) (distinguishing between Title  VII disparate-treatment and disparate-impact claims for the same reason).  Another useful analogy is breach of contract cases.  *See, e.g., Clinic v.  Hamann*, 808 N.W.2d 828, 836 (Minn. 2011) (breach of contract when employer revoked a policy was a single violation even though it had continuing consequences on subsequent paychecks) (extensive discussion of accrual case law).  These breach of contract cases are relevant because the Administrator is attempting to enforce the misrepresentation of need in the 9142 application as if it was contractual.  Finally, construction cases under the Clean Air Act are also relevant.  *See, e.g., Sierra Club v. Oklahoma Gas & Elec. Co*., 816 F.3d 666, 671-74 (10th Cir. 2016) (under §

2462, construction of facility was a single, ongoing project or act, not a disjointed series of discrete acts). These construction cases are relevant because, once the owner begins construction, the violation has accrued and each day of further construction does not represent a new violation.

This case law lends itself to a fairly simple analogy. Consider a carpenter who breaches a contract and fails to repair a house roof. This is a single violation, even though there is new harm every time it rains. Nevertheless, there is no new violation every time it rains. The homeowner could sue even without it raining (and might even be obligated to do so under a duty to mitigate), but that does not mean that the rain is necessary to perfect the claim. Similarly, the alleged misrepresentation of need first accrued on November 7, 2012, when the application was submitted, at which point the Administrator could have brought an enforcement action, and once the Employer misrepresented its need, the violation had occurred and there was no reason to wait for the next payday. *See* 20 C.F.R. § 655.65 (f) (the 2008 DOL Rule attaches when the 9142 application is certified or the employment begins, *whichever is earlier*).

**b. The Accrual of the Claim Was Not Delayed by a Continuing or Repeated Violation**. Despite the unique requirements of §655.22 (n), the modern case law as to when a cause of action accrues, and relevant analogous case law, DOL concluded that there was a "continuing violation" running continuously both before as well as after February 6, 2013. Such an argument has no legal merit. A continuing violation, such as a hostile work environment, is based on the cumulative effect of individual acts into a single unlawful act. *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002). There is no such element to WHD's claim.

Alternatively, DOL may contend that there were repeated violations or separate accruals, each of which started a new statute of limitations. This argument also lacks merit. It completely rewrites the unique requirements of §655.22 (n). The "repeated violations" doctrine has been raised under other statutes of limitation, but it has no application under §2462. The penalty statute has the unique requirement that a claim accrues "from the date when the claim *first* accrued." *See Sierra Club*, 816 F.3d at 671 (under § 2462, any later violation is best viewed as a continuing rather than repeated violation). The repeated violation doctrine fails to address when the claim first accrued (regardless of whether it reaccrues), and that it accrues only once or else "first accrues" has no meaning. *Id.* at 671, 673. Moreover, those other statutes, such as the Fair Labor Standards Act, do not have a *scienter* requirement, which precludes each subsequent paycheck from triggering its own violation merely because the amount is deficient. *See, e.g.*, *Figueroa v. District of Columbia Metropolitan Police Dep't*, 633 F.3d 1129, 1134-35 (D.C. Cir. 2011) (FLSA is a strict liability offense that only requires a showing that work was performed and the pay was improper).

Next, the repeated violation doctrine fails to account for modern accrual case law. *Securities & Exch. Comm'n v. Cohen*, 332 F. Supp. 3d 575, 588 n. 6 (E.D.N.Y. 2018) (subsequent misconduct does not change the date on which a complete and present cause of action existed).

Finally, the determination letter framed the sole count as a single violation and did not seek separate or repeated redress. The series of separate paychecks were collectively and adversely affected by one unlawful act of knowing or reckless disregard, *see Sierra Club*, 816 F.3d at 672, just as the citation reads. And all of the paychecks were tied together as an ongoing project by virtue of Employer's prepayment plan.

## IV. DOL'S JURY-LESS ADJUDICATION VIOLATED ARTICLE III AND THE SEVENTH AMENDMENT

Under *Jarkesy II*, DOL was required to bring its claims for CMPs and back wages in an Article III court where Employer could submit the case to a jury based upon "private rights." 144 S. Ct. at 2132. The Supreme Court indicated that the analysis to determine the right to a jury largely depended on historical practice and the determination of whether the suit was "in the nature of an action at common law." *See id*. at 2132.

1. **Presumption of private rights**. The Supreme Court imposed a helpful tool to identify "private rights." Under *Jarkesy II*, private rights are presumed to be at issue. *Id*. at 2134. This is to be distinguished from "public rights," which are the "exception." *Id.* The Supreme Court further cabined public rights by indicating that they involve "distinctive" governmental prerogatives. *Id*. at 2127.

2. **Remedy**. Under *Jarkesy II*, the "remedy" being sought in the suit is "all but dispositive." *Id*. at 2129. In this case, DOL seeks CMPs. The Supreme Court compared CMPs to a common law "action in debt," and concluded that they were triable to a jury. *Id.*

The Supreme Court also dealt with money damages generally, which would include the back wages sought by DOL. *Id.* Money damages were legal in nature and triable to a jury if they were designed at least partially or entirely to punish a party. *Id*. Not surprisingly, this is essentially the very same standard used to identify "penalties" for purposes of the statute of limitations. Employer has already discussed at length that back wages are, at least partially, done for the purpose of punishing or labeling wrongdoers. *See* §III.2. Another factor in determining that money damages are legal in nature is that the recovered funds are not necessarily paid to the "victim." 144 S. Ct. at 2130. Employer has already demonstrated that DOL does not commonly supply back wages to the harmed workers. *See* §III.2.

**3. Cause of action**.  Under *Jarkesy II*, a second factor is the cause of action at stake.  There does not have to be identical correlation of the elements of recovery.  It is sufficient if the modern cause of action is "akin" to a common law action from the late 1700s.  144 S. Ct. at 2139.  *Jarkesy II* is also expansive because it considered whether the modern and common law causes of action "target the same basic behavior."  *Id*. at 2125, 2131 & 2136.

In *Jarkesy II*, the targeted wrongdoing was "misrepresenting or concealing material facts."  *Id*. at 2125.  Specifically, the ALJ's initial determination found Jarkesy had "willfully violated" the SEC statutory anti-fraud provisions.  Petition for Writ of Certiorari at 202a, *Jarkesy II*, 144 S. Ct. 2117 (No. 22-859).  The full Commission later found Jarkesy liable for "making material misstatements and omissions with scienter."  *Id*. at 76a.  This is indistinguishable from what DOL targeted and later charged Employer with: misrepresentation with scienter that was a significant deviation.  *See* §III.1.

The strength of the analogy is all the more apparent by closely examining common law practice.  Blackstone observed that the Court of King's Bench—the "supreme court of common law in the kingdom"—"hath an original jurisdiction and cognizance" of

> all actions of trespass, or other injury alleged to be committed *vi et armis*; of actions for forgery of deeds, maintenance, conspiracy, *deceit*, and actions on the case *which allege any falsity or fraud*: all of which savour of a criminal nature, although the action is brought for a civil remedy; and make the defendant liable in strictness to pay a fine to the king, as well as damages to the injured party.

3 William Blackstone, *Commentaries* *41-42 (fifth and subsequent editions) (emphasis added).

According to another leading scholar,

> By the end of the eighteenth century, the law of fraud (or, as it was more commonly called, deceit) in sales transactions was established in a form that would be familiar to lawyers today"; a plaintiff was required to "plead and prove a *misrepresentation* (or, in some cases, a suppression) of a material fact that was made *knowingly* and with *intent to defraud* and that was relied upon by the plaintiff to his damage.

2 Sir Frederick Pollock & Frederic William Maitland, *The History of English Law Before the Time of Edward I*, at \*534 (2d ed. 1898).  This is a very close match to DOL's claim of false statements made knowingly and willfully under §655.22 (n).

To be sure, the *Jarkesy II* precedent compellingly indicates that this case must be tried to a jury.

**4. Private rights**.  *Jarkesy II* also indicates that the "rights" of a private citizen are sufficient to trigger the right to jury.  144 S. Ct. at 2138.  DOL's claim implicates Employer's property rights to its funding, which is a right triable to a jury.  Property rights are a "core" private right.  *See Jarkesy II*, 144 S. Ct. at 2145 (Gorsuch, J., concurring) ("[B]ecause it was 'the peculiar province of the judiciary' to safeguard life, liberty, and property, due process often meant *judicial* process." (*quoting* 1 St. George Tucker, Blackstone's Commentaries, Editor's App. 358 (1803)); William Baude, *Adjudication Outside Article III*, 133 Harv. L. Rev. 1511, 1542 (2020) ("The deprivation of life, liberty, and property generally requires judicial process and therefore judicial power.").

**5. Common law terms**.  *Jarkesy II* also indicated that a suit is legal in nature and triable to a jury when it incorporates the same common law terms.  144 S. Ct. at 2131, 2136.  That is certainly the case here, where we see common terms (falsity and misrepresentation) as well as concepts (scienter).

**6. Public rights**.  That leaves only the question whether this case is an "exception" involving "distinctive" governmental prerogatives.  It does not.

*Jarkesy II* elaborated on these exceptions, but none of them apply.  The Court discussed *Oceanic Steam Navigation Co. v. Stranahan*, 214 U.S. 320 (1909), in which a customs collector fined a steamship operator for transporting into port an individual with a "loathsome disease."

40

The case turned on "the complete power of Congress over foreign commerce.," *Id*. at 335 (internal quotation omitted). *Jarkesy II* carefully limited *Oceanic* "to the exercise of Congress's power over *foreign* commerce" and not reaching "commerce more broadly." 144 S. Ct. at 2133 n. 1 (emphasis in original).

This case does not implicate *Oceanic's* concerns. It does not involve customs nor foreign commerce. All of Employer's actions are far removed from any port of entry.

Finally, a word about *Atlas Roofing v. OSHRC*, 430 U.S. 442 (1977). After the negative treatment that *Atlas Roofing* has received, it has little precedential value other than the discrete enforcement of OSHA detailed building codes. *Jarkesy II* heavily criticized any continuing validity of that decision. 144 S. Ct. at 2138.

## V.  DOL'S ADJUDICATION VIOLATED ARTICLE II BECAUSE THE ALJ WAS IMPROPERLY INSULATED FROM REMOVAL

In the alternative, Employer raises the constitutional challenge that DOL's ALJ was double-insulated from Presidential removal in violation of Article II.

The Executive's power to remove subordinates is critical to the President's duty to "take care" that the laws are faithfully executed. *See, e.g.*, *Free Enter. Fund v. Public Co. Account. Oversight Bd.*, 561 U.S. 477, 483 (2010); *United States v. Arthrex, Inc.*, 141 S. Ct. 1970, 1979 (2021) (ensuring "a clear and effective chain of command down from the President" allows for "legitimacy and accountability to the public"); *Seila L. LLC v. CFPB*, 140 S. Ct. 2183, 2191 (2020) (removal power ensures the President's desk is where "the buck stop[s]"). As a result, officers may not enjoy "dual for-cause limitations" on their removal. *Free Enter. Fund*, 561 U.S. at 483–84.

DOL's use of ALJs violated Article II because the ALJs enjoy multiple layers of for-cause removal protection, which is expressly prohibited. *See Free Enter. Fund*, 561 U.S. at 506–07.

There is no question that the ALJs exercise sufficient executive power to qualify as "inferior Officers" under Article II. *See Lucia v. SEC*, 585 U.S. 237 (2018). There is also no question about the nature of their removal protections: The ALJs can only be removed if the Secretary proves "good cause" to terminate the ALJ in front of the Merit Systems Protection Board. 5 U.S.C. § 7521. But neither the Secretary nor the President can remove members of the MSPB at-will—they may be removed only by the President for "inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d). Because the ALJs are inferior Officers who wield significant executive power, this dual layer of for-cause removal protection intrudes on the President's removal power, in violation of Article II.

The issue was addressed in *Fleming v. United States Dep't of Agric.*, 987 F.3d 1093 (D.C. Cir. 2021). Because of a unique statutory requirement to exhaust all issues before the agency, the majority remanded the issue for the agency's initial review. *Id*. at 1102-03. However, Judge Rao's separate opinion did reach the issue. She concluded that the "two layers of removal protection" was unconstitutional. *Id*. at 1113-23 (Rao, J., concurring in part, dissenting in part). Her proposed remedy was to vacate the agency's order and remand for further proceedings before an ALJ that was not impermissibly insulated. *Id*. at 1124. Other cases enjoining or vacating double-insulated ALJs include *Jarkesy v. Securities & Exch. Comm'n*, 34 F.4th 446, 463-65 (5th Cir. 2022) (SEC's ALJ), *aff'd*, 144 S. Ct. 2117 (2024); *Walmart Inc. v. King*, No. CV 623-040, 2024 Westlaw 1258223 (S.D. Ga. Mar. 25, 2024) (OCAHO's ALJ).

The proper remedy for this violation is vacatur of DOL's entire award. *Lucia*, 138 S. Ct. at 2056; *Free Enter. Fund*, 561 U.S. at 513.

**VI.  DOL ERRED AS A MATTER OF LAW BY FAILING TO ALLOW OFFSETS TO EMPLOYER**

Employer contended below that it was entitled to credits for having paid for various supplemental income or other valuable facilities.

- **Income tax**.  It is undisputed that Employer paid the employee's obligation for income taxes.  AR 0794 (testimony of Ms. Aguilar); AR 1309, 1311, 1325, 1327 (testimony of Mr. Tom Shobaken); AR 1363 (testimony of Mr. Brajevich).  It is undisputed that there are no regulatory restrictions on an employer claiming a credit for paying the worker's portion of the income tax.  AR 0794 (testimony of Ms. Aguilar); AR 1363 (testimony of Mr. Brajevich).  The source documents for the payment of income taxes are gathered in AR 2825 and calculated in AR 2988.

- **Housing.**  It is undisputed that housing is a normal expense of living and it has value.  AR 0787 (testimony of Ms. Aguilar).  It is also undisputed that carnivals could take a housing credit in 2013. AR 0788, 0871 (testimony of Ms. Aguilar); AR 3337 (guidance letter from DOL).  OFLC approved Employer to provide housing consistent with industry practice, and that is exactly what Employer did. AR 1350, 1351, 1357-1358 (testimony of Mr. Brajevich).  Employer's bunkhouses included valuable, modern living conveniences. Tr. 295 (testimony of Mr. Brajevich).  The source documents for the cost of housing are gathered in AR 2729 and calculated in AR 2729, and AR 2988.

- **Relocation travel.**  It is undisputed that relocation travel is available for credit to FLSA-exempt employers.  AR 0794 (testimony of Ms. Aguilar).  OFLC approved Employer to provide relocation travel consistent with industry practice, and that is exactly what Employer did.  AR 1350, 1351 (testimony of Mr. Brajevich).  It was reasonable to divide total relocation cost by all workers.  AR 0795 (testimony of Ms. Aguilar).  The source

43

documents for the cost of in-and-out-of-country travel are gathered in AR 2748 and calculated in AR 2764, and AR 2988.

- **Local convenience travel**.  It is undisputed that local convenience travel is a classic benefit for workers.  AR 0796 (testimony of Ms. Aguilar). OFLC approved Employer to provide local convenience travel consistent with industry practice, and that is exactly what Employer did.  AR 1350-1351 (testimony of Mr. Brajevich).  The source documents for the cost of local convenience travel are gathered in AR 2779 and calculated in AR 2823, and AR 2988.

In response, the ARB simply reiterated the ALJ's assertion that Butler had cited no authority for these "credits."  This is wrong as a matter of law and should be vacated.

First, the ARB is attempting to foist the burden of proof on to Employer.  There is no dispute that the burden of proof rests with DOL.  *See* §I.

Second, the 2008 DOL Rule contains no general prohibition against wages or credits unless affirmatively authorized elsewhere.  DOL had originally considered restricting deductions to those "expressly permitted by law."  73 Fed. Reg. 29942, 29966 (May 22, 2008) (proposed 20 C.F.R. §655.22 (h)).  In the final 2008 DOL Rule, such a general prohibition was abandoned in favor of the reasonableness requirement of 20 C.F.R. §655.22 (g).  73 Fed. Reg. 78020, 78037 (Dec. 19, 2008).

Third, as a matter of first principles, Employer is entitled to claim credit for providing value to its workers.  The very purpose of taking these credits for benefits conferred is restitutionary: to put the parties in the position that they would have been in, the Administrator's purported goal in this case, AR 0735 (testimony of Ms. Aguilar).  *See, e.g.*, *Wage-And-Hour Opinion Letter No. FLSA 2005-3*, at ¶ 4 (Jan. 7, 2005) (discussing the purpose of a prepayment

plan) <

http://www.dol.gov/whd/opinion/FLSA/2005/2005_01_07_3_FLSA_PrepaymentPlan.pdf >;

U.S. Department of Labor, Wage & Hour Division, *Field Operations Handbook* ¶ 32j16c (2016)

(same) < http://www.dol.gov/whd/FOH/FOH_Ch32.pdf >.  As long as the benefit was conferred,

then Employer's restitutionary interest must be satisfied, regardless of when the benefit occurred.

      Fourth, OFLC approved Employer to comply with "prevailing practices of the mobile

entertainment industry."  AR 1496.  This was specifically identified as including mobile housing

($125 per week) and local convenience travel ($25 per week).  The WHD inspector

acknowledged that she did not know the significance of OFLC approving Employer-Respondent

to follow industry practice related to weekly salaries, housing, and transportation.  Because she

was unfamiliar with carnival practices, she was unable to address whether Employer-Respondent

had complied with prevailing practice.  AR 0784.  Thus, it was uncontested that Employer-

Respondent was following industry practice on the issue of credits. AR 1350, 1355-1356

(testimony of Mr. Brajevich).

      Finally, Employer responds directly to DOL's demand for authority.  The payment of a

worker's income taxes qualifies as wages.  Wage and Hour Division, *Field Operations

Handbook* §30c14 (updated Aug. 31, 2017) (The employer can pay the employee's portion of

Social Security/FICA, and then these are wages credited toward minimum wage and overtime.)

(last visited Sept. 15,2024) <

https://www.dol.gov/agencies/whd/field-operations-handbook >.  The cost of mobile housing

was approved by OFLC and was recoverable by FLSA-exempt employers.  *Administrator v.

Wade Shows, Inc.*, No. 2013-TNE-1, at *8 (OALJ Apr. 10, 2015) (granting summary judgment

and allowing carnival operator credit for providing mobile housing under the 2008 DOL Rule).

Relocation travel was recoverable by FLSA-exempt employers under the 2008 DOL Rule. 73

Fed. Reg. 78020, 78039 (Dec. 19, 2008). And employers have a right to claim local convenience

travel as a credit. *See, e.g.*, 77 Fed. Reg. 10038, 10070 (Feb. 21, 2012) (H-2B employer may

deduct for "local convenience travel (trips to Wal-Mart, Western Union, laundry, etc.)").

## CONCLUSION

The DOL's decision should be vacated and further enforcement should be enjoined.


_____/s/ R. Wayne Pierce_____
R. WAYNE PIERCE
The Pierce Law Firm, LLC
133 Defense Highway, Suite 201
Annapolis, Maryland  21401-7015
Phone:  (410) 573-9959
Fax:  (410) 573-9956
Email:  wpierce@adventurelaw.com

**Attorney for Plaintiff**


## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on September 16, 2024, Plaintiffs' Motion for

Summary Judgment were served electronically by the Court's CM/ECF system on all counsel of

record, each of whom is a filing user.


_____/s/_____
R. WAYNE PIERCE


46